ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Apelando<br><br>v.<br><br>**BILLY CRESPO RIVERA**<br><br>Apelante | KLAN202400638 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **MAYAGÜEZ**<br><br>Civil Núm.: **I1CR20230084**<br><br>Sobre: Art. 246 del Código Penal |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

### SENTENCIA

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece ante nosotros Billy Crespo Rivera (en adelante apelante o Crespo Rivera) y solicita la revocación de la *Sentencia* dictada el 5 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante la misma, el TPI declaró culpable a Crespo Rivera del delito de resistencia u obstrucción a la autoridad pública y lo condenó a una pena de $750.00 de multa y/o la conversión de cárcel a razón de un día de cárcel por cada $50.00 que dejare de pagar hasta un máximo de 10 días.

Examinados los escritos presentados, así como la transcripción estipulada de la prueba oral y el derecho aplicable, acordamos confirmar la *Sentencia* apelada.

### I.

Según surge del expediente, por hechos ocurridos el 11 de enero de 2023, el Ministerio Público presentó una (1) denuncia contra Crespo Rivera por infracción al Artículo 246 del Código Penal de Puerto Rico, 33 LPRA sec. 5336. En específico, la denuncia expuso que:

> El referido imputado de delito, BILLY CRESPO RIVERA, allá en y/o para la fecha, hora y sitio arriba indicado [11 de enero de 2023, a las 12:35 p.m. en Mayagüez],

que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, Sala de Mayagüez, en forma ilegal, voluntaria, maliciosa, a sabiendas, criminalmente, y con intención criminal violó lo dispuesto en el Art. 246 del Código Penal de Puerto Rico. Consistente en que este a propósito y/o con conocimiento, dilató, obstruyó, demoró e impidió a un funcionario o empleado público Agente de la Policía de PR, Agte. Herminio Sánchez Ramos pl. 29762 y Sgto. Duamel González Irizarry pl. 8-30515, en el cumplimiento o al tratar de cumplir alguna de las obligaciones de sus cargos, cuando mientras se efectuaba una intervención con el Sr. Billy W. Biaggi por violación a la Ley 22 de Tránsito, este de forma hostil, grosera y retante, entró a la intervención en el intento de impedir que se interviniera con el Sr. Biaggi, toda vez que la motora que este conducía, KAWASAKI CN1600, tablilla 278002M le pertenecía, y se negaba a entregar los documentos de esta, acercándose de manera retante, y negándose a seguir instrucciones, y los comandos verbales de que se alejara físicamente.

Luego de varios trámites procesales, el juicio en su fondo se llevó a cabo el 21 de mayo de 2024 y el 5 de junio de 2024. La prueba presentada por el Ministerio Público consistió en el testimonio de dos (2) testigos: agente Herminio Sánchez Ramos (agente Sánchez Ramos) y sargento Duhamel González Irizarry (sargento González Irizarry); boletos de tránsito y un USB (Exhibit 1A-1C). Crespo Rivera presentó como prueba: boletos de tránsito (Exhibit A1-A3), Informe de incidente (Exhibit B) y Notas (Exhibit C).

Para un mejor entendimiento de los eventos suscitados ante el foro primario, procedemos a realizar un resumen de los testimonios vertidos.

**Agente Sánchez Ramos**

Testificó que trabaja en la Policía de Puerto Rico, para la División de Patrullas y Carreteras en Mayagüez y contaba con 24 años de servicio. El día de los hechos salía del cuartel de la División de Drogas en Mayagüez junto al sargento González Irizarry cerca del mediodía cuando observó una motora tipo *Cruiser* en la cual su conductor era una persona sin hacer uso de casco, guantes y calzado adecuado. Por ello, decidieron intervenir con el conductor, identificado como Billy Biaggi. Declaró que una vez informó el motivo

de la intervención, Biaggi le indicó que estaba probando la motora. Añadió que durante la interacción se acercó Crespo Rivera a refutarle porqué intervenía con Biaggi, a lo que el contestó que la intervención no era con él. Manifestó que Crespo Rivera estaba en un tono hostil, retante y agresivo, les dijo que eran unos abusadores. Relató que le advirtió que se mantuviera fuera del área, toda vez que la intervención no era con él, que estaba obstruyendo la justicia y que se evitara problemas. Exteriorizó que Crespo Rivera dijo: "será esto Cuba", luego comenzó a grabar y señalaba al sargento González Irizarry, quien le informó que estaba obstruyendo la justicia y que podía ser arrestado, pero Crespo respondió que dónde en la ley decía eso. Atestó que el sargento González Irizarry le dijo que en la Ley 246. Entonces Crespo Rivera hizo un movimiento hacia al frente de forma agresiva y seguía señalando y acercándose al sargento González Irizarry, por lo que éste último lo agarró por el hombro y lo puso bajo arresto. Especificó que Crespo Rivera hizo fuerza para evitar ser arrestado.[1]

El testigo narró que lo que el sargento González Irizarry y él estaban haciendo eran obligaciones inherentes a su cargo y Crespo Rivera no dejaba culminar la intervención con Biaggi. Lo arrestaron entre los dos porque este se resistía. La razón del arresto fue que no seguía las instrucciones durante una intervención que no le correspondía, que no era de él, ni tenía parte en la misma. Indicó que éste se acercaba a ellos en el momento de la intervención, aunque se le pedía que se alejara.[2]

Durante el contrainterrogatorio, el agente Sánchez Ramos declaró que una persona hostil era una que actuaba contrario a lo que se le solicitaba y que no necesariamente tenía que haber agresión. Precisó que una persona que reclama y pide saber por qué

---

[1] Transcripción de la Prueba Oral (TPO), págs. 6, 11-14.
[2] TPO, págs. 15, 17, 26.

le estaban diciendo que estaba actuando mal es hostil. Indicó que Crespo Rivera lo retó cuando expresó que no se iba a mover del lugar.[3]

### Sargento González Irizarry

El testigo expuso que llevaba 23 años en la División de Tránsito de Mayagüez. El día del incidente estaba como supervisor en dicha división y en compañía del agente Sánchez Ramos. Cerca de las 11:35 am salían del estacionamiento de la división de drogas y observaron un motociclista carente de casco, equipo de seguridad, lo que les llamó la atención. Decidieron intervenir con el motociclista mediante biombo y sirena, este resultó ser Billy Biaggi. Le ordenaron que se detuviera y este lo hizo en la calle que cruza el residencial Roosevelt. El conductor le dijo que estaba probando la motora. El sargento González Irizarry expresó que, mientras intervenían con Biaggi, se acercó Crespo Rivera y manifestó que la motora era de él. Narró que el tono de voz de Crespo Rivera era alto y continuaba increpando en la intervención. Explicó que el agente Sánchez Ramos le dio instrucciones a Crespo Rivera en cuatro (4) ocasiones. Atestó que en un momento dado le dijo a Crespo Rivera que permaneciera en el área de su motora y este lo miraba mal. Añadió que éste manifestó molesto y grosero: "será esto Cuba", mientras hacía ademanes con las manos. Declaró que recibió una llamada telefónica y se ubicó frente a la patrulla en el lado izquierdo.[4]

Expuso que Crespo Rivera sustrajo unos papeles de la motora, sacó su teléfono y lo comenzó a grabar. Contó que éste le preguntó que dónde en la Ley 22 decía que se tenía que mover del lugar. Testificó que le dijo a Crespo Rivera que se moviera porque la intervención inicial se hace con el conductor que era Biaggi. Que Crespo Rivera llegó sin haber sido solicitado y se le acercó bastante

---

[3] *Íd.*, págs. 29, 64-67, 87.
[4] *Íd.*, págs. 115, 118, 120-125.

al agente Sánchez Ramos. El sargento González Irizarry atestó que cuando culminó la llamada telefónica le explicó a Crespo Rivera que bajo el Artículo 246 del Código Penal él estaba obstruyendo la justicia y la labor del agente que intervino con Biaggi. Que Crespo Rivera seguía increpando al agente Sánchez Ramos sobre los boletos que iba a expedir. Añadió que en ese momento le dijo a Crespo Rivera que iba a ser arrestado si no seguía las instrucciones y este hizo ademanes con las manos y grabándole de cerca. Declaró que cuando vio que este no tenía intenciones de seguir las instrucciones, de cooperar, ni de moverse del área de la intervención, lo agarró por la mano, le anunció el arresto y le llevó las manos a la parte posterior. Enunció que Crespo Rivera comenzó a decir que era claustrofóbico, que no lo podía arrestar y se tensó, es entonces cuando el agente Sánchez Ramos lo asistió. Contó que hicieron doble restricción y luego le hicieron las advertencias.[5]

Examinada la prueba desfilada ante sí, escuchados los testimonios vertidos durante el juicio y el video sometido como evidencia, y en lo pertinente, el juzgador de instancia declaró culpable a Crespo Rivera por violación al Art. 246 del Código Penal de 2012. Consecuentemente, lo condenó a una pena de $750.00 de multa y/o la conversión de cárcel a razón de un día de cárcel por cada $50.00 que dejare de pagar hasta un máximo de 10 días.[6]

Inconforme, Crespo Rivera acude ante nosotros mediante el recurso de apelación de epígrafe, en el cual plantea los siguientes señalamientos de error:

> El Ministerio Público no cumplió con su obligación y carga probatoria para establecer la culpabilidad del apelante más allá de duda razonable.

> Incurrió en error el Tribunal de Primera Instancia al declarar al apelante culpable del delito imputado toda vez que la prueba desfilada por el Ministerio Público no logró demostrar intención criminal.

---

[5] *Íd.,* págs. 113, 125, 128-131, 136.
[6] El juzgador de los hechos lo eximió del pago de la pena especial.

Incurrió en error el Tribunal de Primera Instancia al declarar culpable al apelante con prueba contradictoria que impide que se configuren los elementos del delito.

El 9 de julio de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su alegato. Con el beneficio de la transcripción de la prueba oral, los autos originales y la comparecencia de todas las partes, resolvemos.

**II.**

**A.**

Como cuestión de umbral debemos repasar la norma relacionada al *quantum* y peso de la prueba en los casos criminales y aquella referente a nuestra capacidad revisora de los dictámenes de las causas penales.

Como sabemos, a todo acusado se le presume inocente hasta que su culpabilidad sea probada más allá de duda razonable. Véase, Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Por lo tanto, para derrotar esta presunción, el Ministerio Público deberá presentar prueba sobre todos los elementos del delito y su conexión con el acusado, así como la intención o negligencia criminal. *Pueblo v. Resto Laureano*, 206 DPR 963, 967 (2021); *Pueblo v. Henríquez, Urbáez*, 205 DPR 311, 323-324 (2020); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000). Así, la carencia de prueba sobre alguno de los elementos del delito implicaría el incumplimiento por parte del Estado con su carga probatoria y supondría la absolución del acusado respecto al delito imputado. *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024).

Sin embargo, la prueba presentada no supone la necesidad u obligación de probar la comisión del delito con certidumbre matemática. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). La misma deberá ser aquella que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no

prevenido. *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002). Véase, además, *Pueblo v. Acevedo Estrada*, supra; *Pueblo v. Rodríguez Román*, 128 DPR 121, 131 (1991). Además, nuestro Tribunal Supremo en repetidas ocasiones ha puntualizado que la evidencia directa de un testigo que le merezca credibilidad puede ser suficiente para establecer un hecho. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15 (1995); Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110. Lo anterior, aun cuando el testimonio no sea "perfecto", toda vez que es al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables. *Pueblo v. Chévere Heredia*, supra, págs. 15-16.

De otra parte, la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendremos con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Negrón Ramírez*, supra, citando a *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2008); *Pueblo v. Acevedo Estrada*, supra. Lo anterior cobra mayor vigencia cuando se trata de la prueba testifical desfilada en el juicio. *Pueblo v. Negrón Ramírez*, supra. Ello es así, debido a que son los foros de instancia los que se encuentran en mejor posición para aquilatar la prueba desfilada pues, son ellos los que tienen la oportunidad de observar y escuchar a los testigos. *Pueblo v. Acevedo Estrada*, supra; *Pueblo v. Rosario Reyes*, 138 DPR 591, 599 (1995).

Por tanto, a menos que existan las situaciones antes señaladas o que la apreciación de la prueba no encuentre cabida en la realidad fáctica, sea inherentemente imposible o increíble, este Tribunal de Apelaciones se abstendrá de intervenir con dicho ejercicio. *Pueblo v. Acevedo Estrada*, supra. Ahora bien, los foros apelativos pueden intervenir con tal apreciación cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas,

sobre la culpabilidad del acusado". *Pueblo v. Casillas Díaz*, 190 DPR 398 (2014), citando a *Pueblo v. Santiago*, 176 DPR 133, 148 (2009).

Un tribunal apelativo también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que éste incurrió en un abuso de discreción al apreciar y adjudicar la prueba presentada ante sí. *Pueblo v. Negrón Ramírez*, supra, citando a *Pueblo v. Rivera Montalvo*, supra. En armonía con lo anterior, "un tribunal apelativo incurre también en abuso de discreción si sustituye el criterio de apreciación de la prueba realizado por el juzgador de hechos en el foro de instancia, o las determinaciones de hechos realizadas por éste, sin haber mediado prejuicio, parcialidad, pasión o error manifiesto". *Pueblo v. Negrón Ramírez*, supra.

**B.**

El artículo 246 del Código Penal de 2012, 33 LPRA sec. 5336, estatuye lo relacionado al delito de resistencia u obstrucción a la autoridad pública. Este dispone, en lo aquí pertinente, lo siguiente:

> Constituirá delito menos grave la resistencia u obstrucción al ejercicio de la autoridad pública a propósito o con conocimiento en cualquiera de las siguientes circunstancias:
>
> **(a)** Impedir a cualquier funcionario o empleado público en el cumplimiento o al tratar de cumplir alguna de las obligaciones de su cargo.
>
> [...]
>
> **(e)** Resistir al arresto o huir violentamente luego de ser informado por un funcionario del orden público o persona particular en los casos permitidos por ley, de su autoridad legal para practicarlo.
>
> [...]

Al examinar la precitada disposición resulta evidente que la conducta debe ser realizada a propósito o con conocimiento. Además, para que se configure el delito, el funcionario o empleado público tiene que estar ejerciendo un acto lícito y propio de su cargo, siendo suficiente que la persona desobedezca una orden lícita de un

funcionario o se oponga a ella para que se considere una resistencia. *Pueblo v. Ortiz Díaz,* 123 DPR 865, 873 (1989) (Sentencia).

Asimismo, con relación a la modalidad del inciso (a), comenta la doctora Dora Nevares Muñiz[7]:

> El hecho de desobedecer una orden lícita y dentro de las prerrogativas del cargo de un funcionario o empleado público es suficiente para caer bajo las modalidades contempladas en este delito por cuanto desobedecer esa orden puede entenderse como un acto de impedir el debido cumplimiento del deber por parte del funcionario público. Cualquier acto de oposición a la orden lícita que un funcionario o empleado público trata de hacer cumplir constituye una resistencia. [...]

**III.**

En la presente causa, el apelante impugna su condena por el delito de resistencia u obstrucción a la autoridad pública, bajo el fundamento de que el Ministerio Público no probó los elementos requeridos por nuestro ordenamiento jurídico. Sostiene que nunca obstruyó la labor que realizaba el agente Sánchez Ramos y el sargento González Irizarry, quienes, a su entender, contaron con espacio y tiempo para hacer su trabajo de expedir los boletos de tránsito correspondientes al conductor de la motora, Billy Biaggi. Añade que los boletos se expidieron en 10 minutos, por lo que el objetivo de la intervención con Biaggi se cumplió a cabalidad. Precisa que los hechos del caso denotan su falta de intención criminal. Apunta que más bien ejerció su derecho a la libertad de expresión y el propósito de poner en contexto a los policías que él era el dueño de la motora que manejaba Biaggi. Arguye que la prueba testifical en el caso fue contradictoria.

Por su parte, el Ministerio Público argumenta que el testimonio del agente Sánchez Ramos y el sargento González Irizarry demostraron la culpabilidad del apelante más allá de duda razonable. Esboza que el apelante no se limitó a hacer un ejercicio

---

[7] D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta Ed., San Juan, Instituto para el Desarrollo del Derecho, 2019, pág. 383.

válido de su libertad de expresión, sino que constantemente interrumpió las labores de los agentes del orden público al insistir, cuestionar y acercarse al agente Sánchez Ramos mientras se disponía a emitir unos boletos de tránsito a una tercera persona. Añade que exhibió una actitud hostil y agresiva y se interpuso en la intervención con Biaggi con la intención que el agente Sánchez Ramos no pudiera emitir los boletos mencionados. Por ende, es su postura que el TPI actuó correctamente al declarar culpable al apelante del delito imputado.

De entrada, es meritorio destacar que es doctrina legal reiterada que la apreciación de la prueba realizada por los foros de primera instancia debe ser objeto de respeto y deferencia. *Pueblo v. Acevedo Estrada*, supra. Ello debido a que, son los foros de instancia los que están en mejor posición para evaluar la prueba desfilada, pues son quienes tienen la oportunidad de observar y escuchar a los testigos. *Íd.*

Tras un examen detenido del expediente ante nuestra consideración y la transcripción de la prueba oral desfilada ante el foro primario, no vemos que éste haya incurrido en un craso abuso de discreción, o haya mediado prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Veamos.

Conforme surge de la denuncia por el delito tipificado en el Art. 246 del Código Penal de 2012, la infracción del apelante consistió en que "[...] a propósito y/o con conocimiento, dilató, obstruyó, demoró e impidió a un funcionario o empleado público Agente de la Policía de PR, Agte. Herminio Sánchez Ramos pl. 29762 y Sgto. Duamel González Irizarry pl. 8-30515, [...] de forma hostil, grosera y retante, entró a la intervención en el intento de impedir que se interviniera con el Sr. Biaggi, [...] y se negaba a entregar los documentos de esta, acercándose de manera retante, y negándose a seguir instrucciones, y los comandos verbales de que se alejara

físicamente." Para que se configure el aludido delito, la actuación del apelante debió haber sido una que impidió o intentó impedir al a los agentes del orden público cumplir alguna de las obligaciones de sus cargos.

En el presente caso, el Ministerio Público desfiló prueba suficiente para permitirle al foro *a quo* razonablemente concluir que el apelante cometió el delito imputado más allá de duda razonable. Quedó demostrado que los agentes del orden público dieron una orden, acto legítimo e inherente a sus funciones, y el apelante no la acató. En su fallo, el juzgador de los hechos expresó que, si bien las personas tienen derecho a cuestionar, cuando un agente del orden público está en una intervención, se debe guardar respeto a esa labor.

En virtud de lo antes expuesto y en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con la apreciación de la prueba realizada por el juzgador de instancia, quien tuvo la oportunidad de escuchar y ver a los testigos declarar.[8] Los testimonios vertidos como prueba de cargo por el Ministerio Público fueron correctamente apreciados y creídos por el foro *a quo*. Así, del expediente ante nuestra consideración no surge base alguna para alterar la decisión apelada, por lo cual procede confirmar la *Sentencia*.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] Respecto a la mejor posición en la que se encuentran los foros de instancia para apreciar y aquilatar la prueba desfilada ante sí, véase *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975).